HUGHES COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7142. Promulgated September 27, 1927.

1. Reduction of officer's salary approved.
2. Rates of depreciation, with respect to mine cars, mining machines, and miners' houses determined.

*Ira L. Smith, Esq.*, for the petitioner.
*M. E. McDowell, Esq.*, for the respondent.

In this proceeding the petitioner seeks a redetermination of a deficiency in income tax for the year 1920 in the amount of $5,585.75. It is alleged that the Commissioner committed error in reducing the amount paid as salaries to officers from $40,000 to $32,500, and in reducing the depreciation claimed on mine cars, mining machines, and houses by an amount of $4,642.92.

### FINDINGS OF FACT.

The petitioner is a West Virginia corporation, organized and incorporated on February 8, 1917. Its business is coal mining and its principal office is located at Fairmont, W. Va.

In 1920, the year under question, about 2,080 shares of the corporation's capital stock, par value $100 per share, were outstanding. The president, Clarence D. Robinson, owned or controlled about 50 per cent.

During 1917 and 1918 the corporation's property was in the development stage, no coal being mined in 1917 and but 7,050 tons being mined and shipped in 1918. During 1919 the corporation, under adverse market conditions, mined and shipped 31,534 tons of coal. In 1920, with favorable market conditions prevailing, 67,552 tons of coal were mined and shipped, or a total shipment covering the four-year period of 106,136 tons.

The corporation had but little income, if any, during its first three years of existence, but in its fourth year, 1920, it made some money.

Since organization in 1917 and during the year involved the principal burden of developing, financing, and managing the corporation was left to the president, Clarence D. Robinson. In addition to his duties of managing the affairs of the corporation herein involved, Clarence D. Robinson was employed in 1920 as general manager of another coal company from which he drew a salary. He was also interested in various other business enterprises. Of his total working time in 1920 about three-fourths was devoted to managing the affairs of the corporation herein involved and about one-fourth devoted to managing the affairs of the other coal company.

No salaries were paid the officers of the corporation until 1920. Pursuant to an action taken by the corporation's directors at a meeting on December 9, 1920, the officers were paid the following amounts as salaries in 1920:

| | |
|---|---|
| Clarence D. Robinson, president | $30,000 |
| H. P. Robinson, vice president | 5,000 |
| Hugh F. Smith, secretary | 5,000 |
| Total | 40,000 |

The total amount of salaries ($40,000) paid the officers in 1920, was claimed as deductions from the petitioner's gross income that

year. The respondent allowed these salary deductions in 1920 with the exception of $7,500 of the amount paid to Clarence D. Robinson.

Mine cars of an inferior grade were purchased by the corporation in 1917 as it was unable to purchase cars of a standard grade. These cars had a capacity of two tons each, with plain-bearing wheels, and were constructed of oak and iron. These inferior-grade cars, purchased in 1917, were worn out and discarded by 1922 and in some instances prior to that time.

Mining machines, two in number, and electrically operated, were purchased in 1917 or 1918 at a cost of about $2,300 each. Both machines were unsatisfactory, becoming worn out and obsolete in 1922 and were discarded with no scrap value. New machines of an improved type were purchased to take the place of the discarded machines.

The miners' houses were built by the corporation in 1917 and 1918. These houses were of frame construction, pine and hemlock, one story, and beaver-boarded inside. The houses had no cellars and no foundations other than wood posts. The roofing was of rubberoid material. The wear on the houses due to use was considerable as the tenants were moving in and out at approximately from one to two-month intervals.

The rates of depreciation in 1920 claimed by the petitioner with respect to the three foregoing classes of assets and the corresponding rates for the same period allowed by the respondent were as follows:

| Assets | Claimed | Allowed |
|---|---|---|
| | Per cent | Per cent |
| Mine cars | 20 | 12½ |
| Mining machines | 20 | 15 |
| Miners' houses | 10 | 5 |

OPINION.

VAN FOSSAN: Petitioner was a small coal company with a production of only 67,552 tons for the taxable year. Its president had served during 1917, 1918, and 1919 without salary. In 1920 it paid him $30,000. The Commissioner reduced this amount to $22,500. Petitioner's president was also general manager of another and larger coal company and was paid a salary by it. He had various other business interests to which he gave some time and from which he received compensation. The evidence is insufficient to prove that the action of the Commissioner was in error.

The second issue presented relates to the proper rates to be applied to certain of the corporation's depreciable assets. In view of the evidence presented, we are of the opinion that the following rates

of depreciation should be applied, as constituting a reasonable allowance for the exhaustion, wear and tear of the assets in question for the year 1920:

| Assets | Allowable rates |
|---|---|
| | Per cent |
| Mine cars | 20 |
| Mine machines | 20 |
| Minors' houses | 7½ |

The deficiency should be recomputed in accordance with this decision.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.